Good morning, Your Honors, and may it please the Court, my name is Linda Harder. I'm with the Federal Defender's Office in the Eastern District of California. I represent Anthony Bier, and I'd also like to try and reserve three minutes for rebuttal. I'd like to begin by focusing on the official victim enhancement. That was one of the issues I raised on appeal. The application of this enhancement under 3A1.2b of the guidelines raised Mr. Bier's offense level six levels, nearly doubling his sentence from 21 months to 41 months. Our position with regard to this enhancement is not, as the government suggested in their papers, that the President cannot ever be a victim in this type of offense, but merely that the President was not a victim in this particular case. In analyzing this, one can look in the guidelines for the definition of victim, but it's absent there. 3A1.2 doesn't define what the word victim is. It does suggest in Application Note 5 that the President or Vice President could be a victim of this offense, but it doesn't define the word victim, nor is it defined in 1B1.1, where many of the other terms are defined. In the grouping chapter, there is a brief comment about what a victim is, only to exclude those people who are merely indirectly or secondarily harmed by some offense. The grouping section also mentions that many offenses don't have identifiable victims, but the victim in an offense can be society at large. The word victim is described in the Victims' Rights Act in 18 U.S.C. 3771. That section specifically defines crime victim as a person directly or proximately harmed as a result of an offense. And this definition, I would suggest, is also consistent with what the common understanding of the word victim would be, somebody who suffers a harm as a result of a defendant's action. In this particular case, there is absolutely no support anywhere in the record that the victim was the President or that the President or Vice President or anybody actually suffered any harm. Not only was the President not made aware of the threats ever, but there the government never suggested in its papers or anywhere else that there was any change in his schedule or any effect whatsoever on the President or the office of the President. So in this particular case and under these facts, I would suggest that the victim is actually the society at large and not a particular person. Does the Hines case run against what you just argued? Well, the Hines case said that in that case the facts were that the President was not made specifically aware of the threat, but I don't believe there was any finding in that case that it didn't have any implication on his schedule or any of his activities. In fact, in that case, it did say that there was a nationwide search. It appears that governmental dysfunction might have been disrupted in that case. Do you have Hines with you? Yes. Could you look at F3rd, page 1476? And my question is, while you're finding the page, didn't the Court in that case say that a President can be an official victim even if his schedule wasn't interrupted, didn't know about it, et cetera? I believe it said that the President could be a victim because of his status as a governmental official. But I don't believe that it binds the Court to find that in this particular case before you that the President was a victim, because he was not harmed in any way. But in Hines, there was no disruption. Well, I'm not sure that we can say that. There was a nationwide search, and it appears that a lot of resources were expended looking for this man. And I don't believe it specifically states in there whether or not this affected the President's schedule. Certainly, if the President couldn't go to Portland because at some point it was evident that Mr. Hines was in the Portland area, I don't know if that was the facts of the Hines case or not. But in this case, I can say that the facts are definitely there was no effect upon the President or the office of the President, nor was he aware in any way. And I think under no definition of the word. I suspect that you're reading Hines too narrowly. That may be, Your Honor, but I still, in this case, there is absolutely no indication. Unless there are any other questions about the victim enhancement, I'd like to move on to the district court's interpretation of 18 U.S.C. 871, the threat statute that Mr. Beer was convicted under in this case. In this case, the district court, over defendant's objection, instructed the jury that this statute is violated if it's proven that the defendant intentionally made a statement which a reasonable person would infer that a recipient would interpret as a serious expression of the intent to do harm. And that's a long way of saying that the defendant's intent to either do harm or any intent he may or may not have to actually threaten is not relevant. And that's the test that comes from this Court's decision in 1969 in the case of U.S. v. Roy. Our position is that this test is overbroad or renders the statute overbroad and that the correct test should be whether or not the defendant made the statement with a subjective intent to either harm or threaten harm or express a serious intent to do harm. Support from this position comes from the Watts case and also from the concurrence in the Rogers decision by the Supreme Court. In the Rogers decision, it's the concurrence that focuses on the legislative history of the statute, 871, also on the First Amendment concerns and on other U.S. Supreme Court cases, and rejects the objective intent test, the exact test that this circuit has set forth in Roy. We just in a recent case, Cassell said that the black Supreme Court case controlled under another statute, but specifically noted that it didn't necessarily change our standard under 871. So I'm not sure that this panel could do anything. That's correct. The Cassell case, I think, interpreted a true threat as one that included a specific intent on behalf of the speaker in another context and left for another day the context of 871. It's difficult to reconcile the Roy interpretation of a threat and the Cassell interpretation of a threat. But I do recognize that I think the best that we can ask for in this particular case is that the panel, that this panel refer the case for an en banc hearing. So you admit that the instruction was correct under Ninth Circuit law at the time? I do concede that under U.S. v. Roy, the instruction did comport with that decision. That's the current law of this circuit. It's merely extremely difficult to reconcile that with both the concurrence in Rogers and this Court's other decisions in cases like Cassell that interpret true threats as requiring some sort of intent on behalf of the speaker. But here, maybe we don't have to face the issue in that he made his intent very clear. I'm threatening the President. My reason is rather peculiar, but I want it known that I am threatening the President. He did the threats themselves seem to be very clear. But what is missing in this case, and what is missing when you have a general intent crime, is that there's no opportunity really for the defendant to further explain his intent, and perhaps more importantly, the defense is precluded from putting any information about diminished capacity, which in a specific intent crime might be relevant to the juror. The jurors would be entitled to hear that sort of evidence to determine whether or not the defendant could formulate the intent required. You're down to about 30 seconds. Did you want to save some time? Yes, please. Thank you. Thank you for your argument. We'll hear from the government at this time. Ms. Andresi. Good morning. May it please the Court. My name is Ellen Andresi. I'm an assistant United States attorney from the Eastern District of California. I should note that I was trial counsel below, but I did not author the brief that was submitted to this Court. Essentially, the district court did exactly as it was supposed to do. It followed longstanding Ninth Circuit precedent when it instructed the jury using the model jury instructions, and when it used the language directly taken from Roy. And Roy has been affirmed throughout. Now, it also applied longstanding precedent when it applied sections 2A.1.6 and 3A.1.2 when it calculated the guidelines. The district court did not commit plain error. It didn't err at all. And moreover, the defendant's sentence of 41 months is just and reasonable. The court gave the defendant every break it could. It gave him a six-month downward departure for diminished capacity and overstated criminal history. And it even gave it the two-level downward adjustment for acceptance of responsibility despite the fact that the defendant went to trial, and he also testified. Now, the district court ensured that the defendant got a fair trial and that he was sentenced justly and reasonably. Now, with respect to the issues that the defendant defense raised today, with respect to the official victim enhancement, defendant focuses on victimization rather than the fact that the crime is committed when the threat is made. And I would recommend to the Court a decision authored by one of your panel members, McAnitch, from 1993. Where this Court said that a sentencing enhancement based on the fact that the President was the recipient of a threat is easily supportable because of the response the threat necessarily provokes in those whose responsibility it is to protect the Chief of State. That citation is 994, Fed Second, 1380. Is this in your brief? No, Your Honor. When you're done with your argument, do a little slip with the courtroom clerk, give a copy to your opponent. Absolutely, Your Honor. Go ahead. Now, with respect to 871, Roy has been reaffirmed in Roma. It has also been, which was a 2005 decision following Castle, and it has also been affirmed in Stewart. And I will give you that citation, and we'll provide it to the defense attorney. It's a little suspect in light of Black, is it not? Should we be seeking some type of bank review? No, Your Honor. Black dealt specifically, as did Castle, with First Amendment issues. That issue was not raised here at all. And so the objective test supported by Roy should still remain in effect. Now, if you're going to go to the court, you're going to have to go to the judge. Maybe we don't even reach the issue, since it was very clear in this case that he expressed his intent several times. That's correct, Your Honor. And that's what happened in the Romo case. I would respectfully request that this Court, if it so isn't so inclined, reaffirm Roy to make sure that it is clear in this day and age that the objective test is what is used when a threat is made under 871. If the panel has no further questions, I would submit. I don't see any. Thank you for your argument. Rebuttal? Thirty seconds, so I'll speak quickly. Just two items. First, the defendant did not receive a downward departure in this case. This was a guidelines sentence. And secondly, I think it is relevant, Your Honor, in this case that the test from specifically because the defendant's mental health and did not come into play in this case about whether or not he could really formulate intent. And I think the jury had a right to that information if the test is the subjective intent of the speaker. That's all. Would you like an opportunity to respond to the case cited by your opponent? Not by letter, but by letter. I could look at it and respond. I apologize, the clerk, if you do. By tomorrow afternoon. Okay, that would be fine. You're not required to or not if you feel the issues are adequately dealt with by the existing briefs and arguments, no problem. But if you'd like the opportunity for a letter brief, we'd be happy to give it to you. Thank you. Thank you. Thank you both for your arguments. The case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar, which is United States v. Rodriguez-Guzman. Thank you.
judges: B. Fletcher, Siler , Hawkins